IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| ROGER JOSE ALMANZAR,<br><br>              Petitioner,<br><br>    v.<br><br>J. HOLLINGSWORTH,<br><br>              Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-6244 (JBS)<br><br>**OPINION** |
|---|---|

APPEARANCES:

ROGER JOSE ALMANZAR, Petitioner pro se
67686-054
FCI Fort Dix
PO Box 2000
Fort Dix, New Jersey 08640

CAROLINE A. SADLOWSKI, AUSA
Office of the U.S. Attorney
970 Broad Street
Newark, New Jersey 07102

IRENE E. DOWDY, AUSA
Office of the U.S. Attorney
401 Market Street
Fourth Floor
PO Box 2098
Camden, New Jersey 08101
    Attorneys for Respondent J. Hollingsworth

CHRISTINA SAETTA CLARK
Senior Attorney Advisor
Federal Bureau of Prisons
    Of Counsel

**SIMANDLE, District Judge:**

## I. INTRODUCTION

This matter comes before the Court on Roger Jose Almanzar's petition for writ of habeas corpus challenging a disciplinary proceeding conducted by the Bureau of Prisons ("BOP"). Petition, Docket Entry 3. Respondent J. Hollingsworth opposes the petition. Answer, Docket Entry 5. The petition is being decided on the papers pursuant to Fed. R. Civ. Pro. 78(b). For the reasons set forth below, the petition is denied.

## II. BACKGROUND

Petitioner, a convicted and sentenced federal prisoner, was incarcerated at USP Canaan, Pennsylvania on January 6, 2015. Petition at 2. According to Incident Report 2668415, a staff member searched Petitioner's assigned locker, 003 Upper, around 8:05 a.m. Incident Report, Declaration of Tara Moran ("Moran Dec.") Exhibit 4 § 11. During the search, the staff member discovered "a plastic bottle containing an unknown substance." *Id.* He tested the substance using Alco-Sensor III device number 1213955.[1] The device "produced a reading of .061 indicating the presence of alcohol." *Id.* The bottle was secured. Petitioner was

---

[1] "An Alco-Sensor III is a device designed to measure the level of alcohol in a liquid." *Mills v. Nash*, No. 04-6251, 2006 WL 477030, at *1 (D.N.J. Feb. 27, 2006) (citing *Smith v. Menifee*, 2003 WL 1872668 (S.D.N.Y. April 10, 2003)).

2

charged with a violation of Code 113, possession of intoxicants.[2] *Id.* §§ 9-10. Lieutenant Hagemeyer delivered a copy of the incident report to Petitioner at 9:00 a.m. and read Petitioner his legal rights. *Id.* §§ 14, 23. Petitioner stated: "It's not mine." *Id.* § 17. The report was ultimately referred to Discipline Hearing Officer ("DHO") Marc Renda for a hearing. *Id.* § 20. Petitioner did not request that any witnesses or evidence be presented. *Id.* § 25. He refused to sign the Inmate Rights Form. Moran Dec. Exhibit 5.

    The hearing was originally scheduled for January 16, 2015 but was postponed when Petitioner asked for a staff representative. A. Rivera, Cook Supervisor, agreed to serve as Petitioner's representative and acknowledged his obligations. The hearing was rescheduled for January 21, 2015. DHO Report, Moran Dec. Exhibit 8 § I.A. Petitioner appeared at the hearing with Mr. Rivera and denied possessing alcohol. Petitioner testified "that his fingerprints would not be present on the plastic bottle which contained tomato sauce, which he was going to cook with. He further admitted that he had obtained the tomato sauce from the 'warehouse.' He stated that he planned to cook with said tomato sauce." Brief in Support at 3. He also stated "If you get finger prints mine won't be on it. You can

---

[2] *See* 28 C.F.R. § 541.3.

3

breathalyze me. If you check the cameras maybe you can see who put it there. I had one bottle outside my locker which had tomato sauce in it." DHO Report § III.B. Petitioner indicated he did not know how the bottle got in his locker, who would have put it there, or why someone would have done so. *Id.*

The DHO considered Petitioner's testimony, the Incident Report, and the photograph of the bottle and Alco-Sensor reading and found that the greater weight of the evidence indicated Petitioner had committed the offense of possessing an intoxicant. *Id.* §§ III.D, IV. The DHO determined Petitioner's testimony "fail[ed] to exculpate him of the charge." *Id.* § V. Although Petitioner did not ask prison officials to test the bottle for fingerprints prior to the hearing, the DHO found that fingerprinting the bottle was neither required nor necessary because Petitioner was responsible for the contents of his assigned area[3] even if his fingerprints were not on the bottle. *Id.* The DHO further concluded a breathalyzer test "would be equally nugatory and unavailing" because the charge did not depend on Petitioner imbibing the alcohol but "whether a substance testing positive for intoxicants was [discovered] in [Petitioner's] assigned living area." *Id.* The DHO noted that

---

[3] "[A] prisoner's area at a minimum includes the prisoner's cell as well as any other space accessible from within the cell." *Denny v. Schultz*, 708 F.3d 140, 146 (3d Cir. 2013).

Petitioner's admission that he took a bottle of tomato sauce from the warehouse to cook with was an admission of stealing and/or possession of stolen property. *Id.* The DHO also rejected Petitioner's request to review the cameras in the living area because under the doctrine of constructive possession, "even if it was demonstrated another inmate placed the bottle in [Petitioner's] locker it would be immaterial. [Petitioner] also has a responsibility to keep his living area free of contraband." *Id.*

The DHO sustained the charges against Petitioner and sanctioned him by disallowing 40 days of good credit time in order to "demonstrate the seriousness of [Petitioner's] actions" and to deter Petitioner and other inmates in the future. *Id.* § VII. Petitioner purportedly received a copy of the DHO Report on January 22, 2015. *Id.*

### III. ANALYSIS

Petitioner argues he was denied due process of law in the course of his disciplinary hearing because the evidence was insufficient to support the charges.[4]

---

[4] The petition's other points set forth the due process standard and BOP disciplinary hearing procedures.

**A. Exhaustion of Administrative Remedies**

Respondent argues the petition should be dismissed for failure to exhaust administrative remedies. Petitioner asserts the BOP incorrectly denied his appeals as time-barred.

Petitioner filed an administrative appeal on March 24, 2015. The BOP's Regional Office denied the appeal as time-barred because it was filed more than 20 days after Petitioner received a copy of the DHO Report on January 22, 2015. Moran Dec. ¶ 5; Moran Exhibit 2. *See also* 28 C.F.R. § 542.14(a),(d)(2). It permitted Petitioner to resubmit his appeal with an explanation from his Unit Team as to why the appeal was late. Petitioner appealed that decision to the Central Office, but his appeal was rejected as untimely on June 11, 2015. Moran Dec. ¶ 5; Moran Exhibit 2. He continued to file appeals with the Regional Office, all of which were dismissed as untimely.[5] Moran Dec. ¶ 5.

"Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241." *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). "If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either 'excuse the faulty exhaustion and reach the merits, or require

---

[5] Neither party submitted copies of Petitioner's appeals or agency responses as part of the record.

the petitioner to exhaust his administrative remedies before proceeding in court.'" *Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quoting *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *abrogated in part on other grounds by Reno v. Koray*, 515 U.S. 506 (1995)).

Exhaustion is an affirmative defense, not a jurisdictional requirement. *Id.* Here, Petitioner has submitted some documentation supporting his assertion that he did not receive a copy of the DHO's written decision until March 16, 2015, namely a copy of the DHO Report containing a handwritten note from Petitioner's Fort Dix case manager at the bottom: "3/16/15 copy given to I/M Almanzar. I/M states he never rec. copy. Call me at Ft. Dix if you have any questions." Traverse, Docket Entry 9 at 6. As there is a question as to whether Petitioner's administrative appeal was timely, and therefore improperly dismissed by the BOP as untimely, the Court will exercise its discretion to address the petition on its merits.

## B. Due Process

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct. When such a statutorily created right exists, a prisoner has a constitutionally protected liberty interest in good time credit." *Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013) (internal citations and

7

quotation marks omitted). "Due process protections attach in prison disciplinary proceedings in which the loss of good-time credits is at stake." *McGee v. Schism*, 463 F. App'x 61, 63 (3d Cir. 2013) (per curiam). Petitioner lost 40 days of good time credit as a sanction. He is therefore entitled to the protections of the Due Process Clause.

In assessing whether disciplinary proceedings complied with the Due Process Clause, the Court considers the factors enumerated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Under *Wolff*, inmates must receive a hearing before an impartial tribunal and "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Inmates should also "be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff" if they are illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case the

issues are complex[.]" *Wolff*, 418 U.S. at 570. Moreover, the "revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Hill*, 472 U.S. at 454 (quoting *Wolff*, 418 U.S. at 558).

Petitioner's sole challenge to the hearing process is that "the evidence submitted against Petitioner was insufficient to sustain the sanctions imposed. No admissible evidence was submitted that would support the finding that the substance contained in the bottle was an alcoholic substance." Brief in Support at 12. He argues the Alco-Sensor reading is insufficient because there was no evidence submitted regarding calibration tests or monthly checks or that the liquid was testing in accordance with the company brochure.

In reviewing a disciplinary proceeding, the Court's function is not to decide whether it would have reached the same decision, but to consider "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). *See also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) ("[A] reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause."). This

9

review is minimal, and "[a] challenge to the weight accorded evidence is not relevant to the question of whether the decision was supported by 'some evidence' because the standard does not require 'weighing of the evidence.'" *McCarthy v. Warden Lewisburg USP*, 631 F. App'x 84, 86-87 (3d Cir. 2015) (quoting *Hill*, 472 U.S. at 455). "Once the reviewing court determines that there is some evidence in the record to support the finding of the hearing officer, an inmate's challenge to the weighing of the evidence must be rejected." *Cardona v. Lewisburg*, 551 F. App'x 633, 637 (3d Cir. 2014).

To the extent the challenge to the sufficiency of the evidence can be construed as objecting to the DHO's denying Petitioner's request for breathalyzer and fingerprint testing and for review of the cameras, the Court finds habeas relief is not warranted. "It is clearly established that due process requires that an inmate be permitted to 'present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 173 (3d Cir. 2011) (quoting *Wolff*, 418 U.S. at 566). "Although prison officials are afforded deference regarding whether evidence might be unduly hazardous or undermine institutional safety or correctional goals, 'the discretion afforded prison officials is not without limits.'" *Id.* (quoting *Young v. Kann*, 926 F.2d 1396,

1400 (3d Cir. 1991)). Hearing officers must make an independent determination of requested evidence's relevancy. *Id.* at 175 n.11.

Petitioner requested the DHO check Petitioner's breath for alcohol, check the bottle for fingerprints, and review cameras surveilling the living area to see who may have placed the bottle in Petitioner's locker. The DHO declined to order a breathalyzer test because whether Petitioner drank the alcohol was irrelevant to the question of whether he possessed it. The Court finds no constitutional error in this decision. Petitioner requested the breathalyzer test at his hearing on January 21, 2015. The bottle was confiscated on January 6, 2015. *See* Incident Report § 11. A breathalyzer test on Petitioner several weeks after the incident date would have no possible bearing on whether Petitioner possessed the alcohol on January 6. The DHO's decision that breathalyzer evidence would not be relevant was not arbitrary or capricious.

The DHO denied Petitioner's request for fingerprint testing and to review the camera footage concluding it did not matter whether Petitioner's fingerprints were on the bottle because

> [t]he rules of constructive possession apply here. All inmates are responsible for all property and contraband in their possession, dominion, and that of which they exercise control. A bottle of intoxicants, which was tested in accord with agency procedure and protocol, was discovered in ALMANZAR's locker (an area of which he

> exercised daily accessibility) and well-exceeded the
> minimum threshold reading for an intoxicant.

DHO Report § V. In other words, Petitioner was responsible for the bottle's contents simply because it was found in his locker. It did not even matter if Petitioner was the one who put it there:

> Specific, to ALMANZAR's request to review media at the "SCP" demonstrating "Maybe he threw it in there" and "maybe you can see who put it in there" was also rejected due [to] mootness. . . . [T]he rules of constructive possession apply here, and even if it was demonstrated another inmate placed the bottle in ALMANZAR's locker it would be immaterial. ALMANZAR also has a responsibility to keep his living area free of contraband.

*Id.*

Fingerprint evidence and the camera footage could be relevant because finding, or not finding, Petitioner's fingerprints on the bottle or seeing another person place the bottle into Petitioner's locker would tend to make Petitioner's possession of the bottle more or less probable. *See* Fed. R. Evid. 401. However, under these particular facts any error in not reviewing the footage or testing for fingerprints is ultimately harmless because the doctrine of collective responsibility, *i.e.*, constructive possession, set forth by the DHO supports the finding that Petitioner possessed the bottle. More significantly, Petitioner made key admissions supporting a finding of possession.

In describing the collective responsibility theory, the Third Circuit stated:

> In a shared cell, all parts of the cell are equally accessible to each prisoner housed in the cell. Thus, each individual prisoner is responsible for keeping the entire cell free from contraband. Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell, and all other space accessible from within the cell, free from contraband, it follows that any contraband found within the cell is constructively possessed by each of the inmates housed in that cell. Thus, the mere discovery of contraband in a shared cell constitutes "some evidence" that each prisoner in that cell possessed the contraband.

*Denny v. Schultz*, 708 F.3d 140, 146 (3d Cir. 2013). Here, the bottle was found in or in the area near Petitioner's assigned locker.[6] Petitioner also admitted certain facts during the hearing that sufficiently show he possessed the bottle that was recovered from his living area. Petitioner admitted he took a bottle of tomato sauce from the warehouse in order to cook with it. DHO Report § V; Brief in Support at 3. He also admitted that he exercised control over the bottle by putting it under a table in his living area. DHO Report § V; Brief in Support at 5. Furthermore, he implicitly admitted the bottle containing tomato sauce was the same bottle that tested positive for alcohol when he argued on appeal that he did not know "that tomato sauce

---

[6] Petitioner argued that the bottle was in fact recovered from just outside of his locker. The Court need not conduct a hearing to resolve this fact question because under either scenario the bottle was recovered from an area over which Petitioner had control.

13

would turn 'alcoholic' in one-two weeks." Brief in Support at 5-6. Even if someone other than Petitioner physically placed the bottle in his locker, Petitioner admitted he brought the bottle that later tested positive for alcohol into his living area himself. Therefore, any error was harmless because of the collective responsibility theory and Petitioner admitted enough facts to support a finding that he possessed the bottle.

The Court further finds that there is some evidence to support the conclusion that Petitioner possessed an intoxicant. As discussed above, Petitioner admitted he personally brought the bottle into his living area. The Alco-Sensor reading, as memorialized in the photograph attached to the DHO Report and in the reporting employee's statement, is some evidence that the substance in the bottle contained alcohol. Moreover, the DHO submitted a declaration to this Court affirming that the device used to test the substance was calibrated in accordance with the manual on a monthly basis, with the most recent calibration prior to the incident being on December 1, 2014. Declaration of Marc Renda ("Renda Dec.") ¶ 5; Alco-Sensor 1213955 Calibration Log, Renda Exhibit 3. A reading of 0.02 is considered a positive result for alcohol. USP Canaan Institution Supplement, Renda Exhibit 1 at ¶ 4(f); BOP Program Statement 6590.07(8) (Dec. 31, 1996). The substance in the bottle produced a reading of 0.61. Incident Report § 11. BOP policies permit the use of the Alco-

Sensor to test liquids, *see* BOP Program Statement 6590.07(9), and the manual for the sensor permits users to test the accuracy of the device by using a "wet bath simulator" consisting of mixture of water and alcohol with a known alcohol concentration. Alco-Sensor III Operator's Manual, Renda Exhibit 4 at 20-24. This indicates the Alco-Sensor can accurately measure the alcoholic content of liquids. The DHO's finding that Petitioner possessed an intoxicant, Code 113, is supported by some evidence. The Court therefore upholds the disciplinary findings.

Prohibited acts are categorized according to the severity of the conduct. Code Level 100s are deemed "Greatest Severity Level Prohibited Acts." 28 C.F.R. § 541.3. The loss of 40 days in good-conduct time is within the permitted sanctions for a Code 113 violation. 28 C.F.R. § 541.4(b)(1). There is no basis to overturn the imposed sanctions.

## IV. CONCLUSION

For the above stated reasons, the petition is denied. An accompanying Order will be entered.

| | |
|---|---|
| **October 2, 2017** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |